No. 25-50976

In the United States Court of Appeals
for the Fifth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

JAMES WESLEY BURGER,
*Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Western District of Texas, No. 1:25-cr-332

———————————

**BURGER'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S EMERGENCY MOTION TO VACATE ORDER RELEASING BURGER PENDING APPEAL**

An experienced district court judge "spent more time thinking about this case than [he has] ever spent thinking about anything else [he has] done on the bench." Att. T at 23–24.[1] After thinking "of almost nothing else other than this case," *id.* at 24, the district court determined that Burger "poses no flight or safety risk" and released him on personal recognizance pending the government's appeal, Att. X at 2.

Despite *agreeing* in the district court that Burger should be released, Att. T at 34, the government now asks this Court to second-guess the

---

[1] All references are to the attachments to the government's motion.

district court's decision—not only on a cold record, but on an emergency basis. This Court should not do so. The district court was well within its discretion to release Burger given the court's extensive knowledge of the case and firsthand familiarity with Burger himself. The government argues that Burger poses a risk of danger largely based on what it characterizes as dire threats that Burger made on Roblox, an online videogame platform. But the district court carefully analyzed Burger's statements—made in the "Church" experience in Roblox where players roleplay as different characters and intentionally engage in distasteful debate—and held that they were not "true threats." *See* Att. Y. And the government cites a variety of other evidence that the district court also considered and concluded that, "by itself[,] would not be criminal." Att. T at 19. So the district court's release determination is well supported by the record.

And contrary to the government's arguments, the district court did not procedurally err in releasing Burger pending appeal. This Court's administrative stay expressly stated that it did "not affect any relief that the district court may provide pursuant to 18 U.S.C. § 3143," the statute governing release or detention pending appeal. The district court correctly applied that provision in deciding to release Burger. The only mistake that the government can point to is a minor clerical error—the district

court did not include two statutorily required conditions in its release order—that the government has not moved to correct in the district court and, in any event, can be easily corrected by directing the district court to amend its order to include those conditions.

What the government is really requesting in its emergency motion is a time machine to go back to the early stages of this case. The government asks this Court for the unprecedented remedy of detaining Burger by reinstating a magistrate judge's detention order from months ago. The government accuses the district court of "toss[ing] aside the magistrate judge's determination without considering the evidence undergirding the previous detention order." Gov't Mot. 16. But the government (1) ignores the district court's deep experience with this case, which involved considering the same evidence; (2) overlooks new developments since the original detention hearing, like Burger now having a suitable residence and attending counseling; and (3) disregards the district court's clear finding that Burger's statements—made as a character in an online experience where players intentionally engage in distasteful debate—were not serious expressions conveying that he meant to commit an act of unlawful violence.

Thus, this Court should deny the government's emergency motion to vacate the district court's release order.

# ARGUMENT

## I. The district court was well within its discretion to release Burger pending the government's appeal.

Under the Bail Reform Act, a "judicial officer *shall* order the … release of the person on personal recognizance" pending a government appeal "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b) (emphasis added); *see id.* § 3143(c) ("The judicial officer shall treat a defendant in a case in which an appeal has been taken by the United States under section 3731 of this title, in accordance with section 3142 of this title"). Applying these provisions, the district court determined that Burger "poses no flight or safety risk" and ordered him released pending appeal. Att. X at 2.

On appeal, this Court reviews that decision under a "deferential" standard and "*must* uphold a district court order if it is supported by the proceedings below." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (emphasis added; cleaned up). The government does not challenge the district court's determination that Burger does not pose a flight risk. Nor could it. Burger is a 19-year-old with no car or driver's license who is living with family. Att. X at 2. Instead, the government claims that Burger is "too dangerous to release" without conditions. Gov't Mot. 12. But the

4

district court's determination is well supported by the record, and the government fails to overcome the deference owed to the district court.

### A.  The district court carefully considered the entire record.

The government claims that an experienced district court judge simply "[i]gnor[ed]" the record when ordering Burger released. Gov't Br. 14. Not so. That characterization does a disservice to the district court, which "spent more time thinking about this case that [it has] ever spent thinking about anything else." Att. T at 23–24. The district court understood the evidence cited in the government's motion because that same evidence came up in the course of the district court deciding Burger's motion to dismiss, which involved extensive briefing and two lengthy hearings. *Compare* Gov't Mot. 13–14 (collecting evidence), *with* Att. G at 4–9 (government citing same evidence in response to motion to dismiss). The district court scrutinized this evidence—it just did not afford it the weight the government wishes the court would have. That is not an abuse of discretion.

### B. The district court found that the nature of the alleged offense and the government's proposed evidence did not show that Burger was dangerous.

Much of the government's argument that Burger is too dangerous to be released without conditions points to the underlying offense: alleged "threats" that Burger was charged with making. *See* Gov't Mot. 2, 13. But the district court judiciously considered Burger's statements and reached a much different conclusion than the government. Although the government argues that the statements were "an advertisement that he's going to go out and slaughter people," Att. T at 13, the district court rejected that view. As the district court explained, Burger made these statements while "playing an *online video game*, speaking as a *character*, among other *players* who were similarly acting as *characters* in a virtual Church," an experience where players "appear as avatars and intentionally engage in distasteful debate." Att. Y at 5 (emphasis in original). So the district court determined that no reasonable juror could conclude that the charged statements were "true threats." *Id.* at 8.

The government also cites a variety of alleged evidence apart from the charged statements, such as notes Burger had when he was transferred to federal custody, his internet search history, and other comments he had made online. *See* Gov't Mot. 13–14. This is more of the same—more speech, but not an indication that Burger was actively planning any kind of attack. The district court also considered this evidence and correctly

6

noted that this "evidence by itself would not be criminal." Att. T at 19.

The district court's view of both the underlying offense and the government's evidence is significant because relevant factors to the release or detention decision—and factors that the magistrate judge explicitly relied on, *see* Att. C at 1—include "the nature and circumstances of the offense charged" and the "weight of the evidence against the person." *See* 18 U.S.C. § 3142(g)(1), (2). The district court found that the nature and circumstances of the offense did not involve a serious threat and found that the government's evidence did not establish that Burger was dangerous. Those conclusions are well supported by the record.

### C. The government ignores developments since the magistrate judge's detention order months ago.

Besides asking this Court to reweigh evidence that the district court already weighed, the government ignores developments in the case since the magistrate judge ordered Burger detained. For instance, the magistrate judge based its decision in part on Burger's "affinity for firearms" and the "lack of any residence to which he could be released." Att. C at 1–2. Months later—by the time the district court was considering whether to release Burger—those issues had been resolved. As the district court explained, Burger "lives with his family." Att. X at 2; *see* Att. V at 2 (explaining that Burger was living with his aunt in Austin). And the district court found that Burger has "no access to firearms, weapons, or

munitions." Att. X at 2; *see* Att. V at 2. The district court was free to consider this undisputed information—not available to the magistrate judge at the initial detention hearing—and reasonably concluded that it supported releasing Burger.

The government also misplaces reliance on a statement by Burger's counsel at the detention hearing early in the case that Burger may require supervision. *See* Gov't Br. 2, 7, 12; Att. R at 64. Again, that ignores subsequent developments. By the time the district court revisited the matter, Burger had been detained for months, attended counseling, and found a suitable residence. At that point, his counsel explained that he "poses no flight or safety risk." Att. V at 1–3. The district court agreed. Att. X at 2.

* * *

Far from suggesting that the district court abused its discretion by ordering Burger released, the record exhibits an extremely diligent district court carefully considering an extensive record and ultimately determining that Burger could be released on personal recognizance pending the government's appeal. This Court should not disturb that determination on a cold record and on an emergency basis.

## II. The procedural errors alleged by the government do not warrant vacating the district court's order or detaining Burger.

The government also quibbles with the procedure the district court used to release Burger. But none of its arguments justify vacating the district court's order and detaining Burger.

### A. The district court properly focused on § 3142(b), the default detention-or-release provision.

The government claims that the district court "[d]isregard[ed] § 3142 as a whole," instead "focus[ing] solely on § 3142(b), which allows release on personal recognizance." Gov't Mot. 16. But the government ignores that "[t]he default position of the law … is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Indeed, under the Bail Reform Act, a court "*shall* order the pretrial release of the person on personal recognizance … *unless* the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b) (emphasis added). So once the district court determined that Burger "poses no flight or safety risk," Att. X at 2, the district court *could not* consider the statute's provisions on detention or release with conditions.

### B. The district court was not required to reopen the detention hearing to release Burger.

Next, the government argues that the district court erred by failing to reopen the detention hearing under § 3142(f). Gov't Mot. 16. But nothing in § 3143(c) suggests that, to determine whether a defendant should be released pending appeal, a district court must reopen a detention hearing held months earlier by a magistrate judge. And the government cites no case requiring that procedure—much less making the failure to follow it reversible error—before granting relief under § 3143. Indeed, this Court's sister circuits have interpreted § 3142(f) to *prohibit* the course of action the government proposes, explaining that reopening a detention hearing "under § 3142(f) is available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order." *See United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003).

Even if the district court was somehow required to review the magistrate judge's earlier detention decision in order to exercise its discretion under § 3143, it is axiomatic that a district court can revisit a magistrate judge's earlier detention order and make an "independent determination." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). "If a person is ordered detained by a magistrate judge, … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The

10

"hierarchy suggested by § 3145[ ] is consistent with the ultimate decision-making power and continuing jurisdiction over the actions of magistrate judges that district court judges possess." *Cisneros*, 328 F.3d at 616; *see United States v. Maull*, 773 F.2d 1479, 1486 (8th Cir. 1985) (en banc) (explaining that § 3145's provisions "underscore the importance of the judge having original jurisdiction over the offense" and rejecting the view that "this substantial responsibility, placed in the hands of an Article III judge, can be diminished by the earlier action of a magistrate").

The government claims that § 3145(b) cannot apply here because neither party explicitly invoked that provision. Gov't Mot. 17. But neither the text of the statute nor caselaw suggests that the parties must specifically cite the provision for a district court to review a magistrate judge's detention order. And the government claims that this Court's administrative stay did not authorize the district court to proceed under § 3145. Gov't Mot. 17. But that makes no sense. The Court's stay allowed the district court to consider release pending appeal, which is governed by § 3143. And to the extent the government believes that the district court had to review the magistrate judge's prior detention order under § 3142 in order to release Burger, § 3145(b) is the mechanism to do so. The district court's order was still issued pursuant to § 3143, consistent with this Court's order. *See* Att. X. Indeed, the government never explains why

11

the Court's order would permit the district court to grant release after reopening the detention hearing under § 3143(f)—another statute not explicitly mentioned in this Court's order—but not after reviewing the detention order itself. After all, these two procedures serve a similar purpose: they are "two avenues through which a release or detention order can be reconsidered prior to review on appeal by a court of appeals." *Cisneros*, 328 F.3d at 614.

In short, when it comes to release and detention orders, "[t]he power to decide must finally reside in the Article III court." *Maull*, 773 F.2d at 1486. The district court here acted entirely properly by making an independent determination that Burger was entitled to release on personal recognizance.

### C. The district court's failure to include statutory conditions does not require vacating the release order and detaining Burger.

Finally, the government notes that the district court did not include in its release order two conditions required by § 3142(b) even when a person is released on personal recognizance: that "the person not commit a Federal, State, or local crime during the period of release" and "that the person cooperate in the collection of a DNA sample." *See* Gov't Mot. 17. What the government never explains, however, is why this minor oversight requires this Court to vacate the district court's release order,

reinstate the magistrate judge's detention order, and order Burger detained. *See* Gov't Mot. 17–18. If the government was so concerned about these statutorily required conditions being imposed, it could move in the district court to correct this clerical error. *See* Fed. R. Crim. P. 36. But it has not done so. Instead, it has raised this inadvertent omission as a frivolous reason to vacate the district court's decision so that the magistrate judge's detention order from months ago can be reinstated. Doing so would improperly "diminish[ ]" the authority of the district court based on "the earlier action of a magistrate." *Maull*, 773 F.2d at 1486. This minor procedural error does not warrant this Court's emergency intervention, and it certainly cannot justify reinstating the magistrate judge's detention order. At most, the Court should remand so that the district court can amend its order to add the statutory conditions.

## CONCLUSION

The Court should deny the government's emergency motion to vacate the district court's order releasing Burger. At most, the Court should remand so that the district court can amend the order to add the conditions required by § 3142(b).

Respectfully submitted.

>MAUREEN SCOTT FRANCO
>Federal Public Defender
>
>s/ Carl R. Hennies
>CARL R. HENNIES
>Assistant Federal Public Defender
>Western District of Texas
>
>*Attorney for Defendant-Appellant*

**Certificate of Compliance with Type-Volume Limit**

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,761 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook and 13-point footnotes.

                                        s/ Carl R. Hennies  
                                        CARL R. HENNIES  
                                        *Attorney for Defendant-Appellant*  
                                        Dated: December 18, 2025