# No. 25-50976
## consolidated with
# No. 25-51021

# In the United States Court of Appeals for the Fifth Circuit

**United States of America,**

Plaintiff-Appellant,

v.

**James Wesley Burger,**

Defendant-Appellee.

On Appeal from the United States District Court
for the Western District of Texas

### REPLY BRIEF FOR THE UNITED STATES

Justin R. Simmons
United States Attorney

Zachary C. Richter
Mark T. Roomberg
Assistant United States Attorneys
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 916-5858

# Table of Contents

Table of Contents.................................................................................. i

Table of Authorities.......................................................................... iii

Introduction ........................................................................................1

Argument.............................................................................................2

    I.    The district court erred in dismissing the indictment
because it misapplied Rule 12 and this Court's precedent
on true threats.......................................................................2

        A.    The district court misapplied Rule 12 by improperly
resolving disputed facts pretrial. ....................................2

            1.    The district court improperly resolved disputed
facts relevant to whether a reasonable person
would regard Burger's statements as serious
expressions of intent to cause harm........................2

            2.    The district court improperly resolved disputed
facts relevant to Burger's mental state. ....................4

            3.    Burger offers no persuasive support for using
Rule 12 on a disputed pretrial record to dismiss
an indictment as not alleging a true threat. ..............5

        B.    The district court misapplied Rule 12 by improperly
resolving disputed facts on an incomplete pretrial
record. .........................................................................7

        C.    Under the correct standard, Burger's statements were
unprotected and criminally punishable true threats..........8

            1.    That Burger's threats appeared in the online
platform Roblox did not mean they were not
true threats..........................................................8

2.  Counts One and Two alleged unprotected true threats against a Christian music festival. ................10

3.  Count Three alleged an unprotected true threat against law enforcement. ......................................14

II.  The district court abused its discretion in releasing Burger unconditionally and has not mooted its abuse of discretion by issuing a new release order without jurisdiction. ........................................................................15

III.  This Court should reassign this case to a different district judge on remand. ...............................................................17

Conclusion........................................................................................21

Certificate of Service .......................................................................22

Certificate of Compliance................................................................22

# Table of Authorities

## <u>Cases</u>

*Bailey v. Iles,*
   87 F.4th 275 (5th Cir. 2023) ............................................................. 8, 9

*Bradford v. Whitley,*
   953 F.2d 1008 (5th Cir. 1992) ........................................................... 19

*Coinbase, Inc. v. Bielski,*
   599 U.S. 736 (2023) ........................................................................... 16

*Counterman v. Colorado,*
   600 U.S. 66 (2023) ....................................................................... 10, 12

*Harris v. New York,*
   401 U.S. 222 (1971) ........................................................................... 19

*Miller v. Sam Houston State Univ.,*
   986 F.3d 880 (5th Cir. 2021) ............................................................. 18

*Miranda v. Arizona,*
   384 U.S. 436 (1966) ........................................................................... 19

*R.A.V. v. City of St. Paul,*
   505 U.S. 377 (1992) ............................................................................. 3

*State v. Metzinger,*
   456 S.W.3d 84 (Mo. Ct. App. 2015) ................................................. 6, 9

*United States v. Alkhabaz,*
   104 F.3d 1492 (6th Cir. 1997) ............................................................. 6

*United States v. Baker,*
   890 F. Supp. 1375 (E.D. Mich. 1995) ................................................. 6

*United States v. Coalwell,*
   No. 20-50869, 2021 WL 4768286 (5th Cir. Oct. 12, 2021) .................. 3

*United States v. Cook,*
   472 F. Supp. 3d 326 (N.D. Miss. 2020) ............................................... 6

*United States v. Cooper,*
   714 F.3d 873 (5th Cir. 2013) .............................................................. 12

*United States v. Covington,*
   395 U.S. 57 (1969) ............................................................................... 2

*United States v. Daughenbaugh,*
   49 F.3d 171 (5th Cir. 1995) ....................................................... passim

*United States v. Doggart,*
   906 F.3d 506 (6th Cir. 2018) ............................................................. 6

*United States v. Jubert,*
   139 F.4th 484 (5th Cir. 2025) ................................................ 3, 5, 7, 8

*United States v. Khan,*
   997 F.3d 242 (5th Cir. 2021) .................................................17, 19, 20

*United States v. Landham,*
   251 F.3d 1072 (6th Cir. 2001) ........................................................... 6

*United States v. Lincoln,*
   403 F.3d 703 (9th Cir. 2005) ............................................................. 6

*United States v. Mix,*
   791 F.3d 603 (5th Cir. 2015) ............................................................. 8

*United States v. Morales,*
   272 F.3d 284 (5th Cir. 2001) ...............................................3, 6, 10, 13

*United States v. Myers,*
   104 F.3d 76 (5th Cir. 1997) ....................................................... 10, 14

*United States v. Nformangum,*
   No. 24-20515, 2026 WL 18900 (5th Cir. Jan. 2, 2026)................. 12, 13

*United States v. O'Dwyer,*
   443 F. App'x 18 (5th Cir. 2011) ................................................ 6, 7, 14

*United States v. O'Dwyer,*
   No. 10-34, 2010 WL 2606657 (E.D. La. June 24, 2010) ..................... 6

*United States v. Perez,*
   43 F.4th 437 (5th Cir. 2022) ..................................................... passim

*United States v. Rafoi,*
   60 F.4th 982 (5th Cir. 2023) ............................................................12

*United States v. Rodríguez-Rivera,*
   918 F.3d 32 (1st Cir. 2019) ............................................................... 7

*United States v. Sayward,*
   No. 3:22cr111, 2022 WL 17849053 (D.N.D. Dec. 22, 2022) ............... 6

*United States v. Stock,*
   728 F.3d 287 (3d Cir. 2013)............................................................ 6

*United States v. Viefhaus,*
   168 F.3d 392 (10th Cir. 1999)....................................................... 6

*United States v. Willis,*
   76 F.4th 467 (5th Cir. 2023) .................................................. 15, 16

*Virginia v. Black,*
   538 U.S. 343 (2003)......................................................................15

*Watts v. United States,*
   394 U.S. 705 (1969)............................................................ 5, 9, 14

*Williams v. Henagan,*
   595 F.3d 610 (5th Cir. 2010)........................................................15

## Statutes

18 U.S.C. § 3143 ...............................................................................16

18 U.S.C. § 875 .................................................................................12

## Rules

Fed. R. App. P. 32 .............................................................................22

Fed. R. Crim. P. 12 .................................................................. 2, 5, 6, 7

## Other

Do512, *Josiah Queen: My Promised Land Tour W/ Strings & Heart,*
   https://do512.com/events/2025/4/12/josiah-queen-my-promised-
   land-tour-tickets (last visited Jan. 14, 2026) ......................................12

**Introduction**

When James Burger announced that he would seek martyrdom by attacking a Christian music festival and law enforcement, a reasonable observer would treat those announcements as serious expressions that he meant to commit unlawful violence. And Burger's pattern of threatening statements across multiple online platforms supports the conclusion that he intentionally or recklessly disregarded the threatening nature of his announcements. Burger seeks to dismiss those who took his announcements seriously as too "sensitive." Def. Br. 36. And he avoids talking about his pattern of threats by dismissing it as irrelevant. Def. Br. 27.

But the law is otherwise. Fearful reactions are probative of whether an objectively reasonable person would interpret a statement as a threat. *United States v. Daughenbaugh*, 49 F.3d 171, 174 (5th Cir. 1995). And a defendant's pattern of conduct is probative of his mental state. *See* U.S. Opening Br. 23-24. The district court erred in circumventing the trial—which by now would be long over—at which a jury could have resolved these issues. This Court should reverse the district court's erroneous dismissal of the indictment, vacate its orders releasing Burger, and remand this case for trial before a different district judge.

1

<h1 align="center">Argument</h1>

**I.    The district court erred in dismissing the indictment because it misapplied Rule 12 and this Court's precedent on true threats.**

Burger concedes that "whether a statement constitutes a true threat is *generally* an issue of fact for a jury." Def. Br. 22. And he does not dispute that a jury must resolve whether he issued threatening statements intentionally or recklessly. Yet he insists that dismissal under Federal Rule of Criminal Procedure 12 was proper even though that rule authorizes dismissal "if trial of the facts surrounding the commission of the alleged offense would be of no assistance," *United States v. Covington*, 395 U.S. 57, 60 (1969). He is wrong. Trial is necessary to resolve the factual disputes surrounding Burger's announcements that he would attack a Christian music concert and law enforcement.

**A.    The district court misapplied Rule 12 by improperly resolving disputed facts pretrial.**

The government's opening brief explains how the district court made its own findings on disputed facts. U.S. Opening Br. 20-24. Burger now claims that the district court did not resolve any disputed facts. Def. Br. 25. The record shows otherwise.

**1.    The district court improperly resolved disputed facts relevant to whether a reasonable person would regard Burger's statements as serious expressions of intent to cause harm.**

First, the district court found that Burger was simply speaking "*as his character*" in a "fictional game understood as such by all participants." ROA.527. But it did so without acknowledging that two people—both

2

experienced Roblox users raised as Muslims—took Burger's statements seriously and contacted the FBI. ROA.390, 472, 547, 551-55, 645, 647, 656-57, 673-74; Dec. 29 Exs. 1, 3.

Burger tries to dismiss their alarm as irrelevant, Def. Br. 36, but this Court has repeatedly held that fearful reactions are probative of whether an objectively reasonable person would interpret a statement as a threat. *E.g.*, *United States v. Jubert*, 139 F.4th 484, 491 (5th Cir. 2025); *United States v. Coalwell*, No. 20-50869, 2021 WL 4768286, at *1 (5th Cir. Oct. 12, 2021); *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001); *Daughenbaugh*, 49 F.3d at 174. After all, true threats have no First Amendment protection not just "because they have relatively low value" but also "because restricting them 'protect[s] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *United States v. Perez*, 43 F.4th 437, 443-44 (5th Cir. 2022) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)).

Burger also tries to dismiss the people who reported him as "sensitive individuals." Def. Br. 36. But the district court made no such finding. And the record would not support that finding anyway. On the contrary, that the individuals who reported Burger were experienced Roblox users raised as Muslim undermines any suggestion that they somehow failed to understand the "norms around appropriate speech" in the "corner[] of the internet" where they saw Burger's threats, Def. Br. 1. Nor is there any

sign in this record that other Roblox users in the "Church" environment both saw Burger's announcements and regarded them as unserious. The users who demonstrably did see Burger's comments took them seriously: Some reported him, ROA.547, 551-55, 647, 656-57, 673-74; Dec. 29 Exs. 1, 3. And those with connections to ISIS encouraged him. Dec. 29 Hr'g 32; ROA.36-40, 551-53.

Burger's attempt to brush off his statement in Roblox as unserious appears to have been part of his plan all along. He has indicated that he used Roblox to avoid law-enforcement detection, Dec. 29 Ex. 2a, and corresponded with an internet user in Russia who suggested that using Roblox would help him avoid the attention of authorities. ROA.653, 664-65; Dec. 29 Ex. 11. By adopting Burger's position, the district court carved out a space where supporters of all sorts of crimes—not just the ISIS supporters Burger conferred with in Roblox—could later claim that threats and collaboration were part of "*playing a game,*" ROA.528.

### 2. The district court improperly resolved disputed facts relevant to Burger's mental state.

The district court also improperly found, despite factual disputes, that "this case fails to meet" the "subjective showing" that Burger "recklessly disregarded the risk" that others would understand his statements as a threat. ROA.527-28. It did so by disregarding Burger's knowledge of how others—including his family—responded to similar threatening

statements and other signs that Burger was not "playing a game," ROA.528. *See* U.S. Opening Br. 22-24.

Burger can deem this evidence "irrelevant to the true threats inquiry," Def. Br. 35, only by ignoring half of the relevant inquiry. "The inquiry is twofold: whether a reasonable person would perceive the statement as threatening, and whether the speaker was subjectively aware of its threatening nature." *Jubert*, 139 F.4th at 491. By failing to acknowledge the second part of the inquiry at all, Burger avoids having to address his pattern of behavior, including his history of discussing violent attacks across various online platforms. *See* Dec. 29 Exs. 1b, 2a, 5, 11, 15, 18-19, 22-23, 25-26. And he avoids having to account for his preparation for an attack—training with a rifle, searching for festivals, and visiting the website of the company promoting the April 12 Christian concert in Austin. *See* Dec. 29 Ex. 9 at 5; Dec. 29 Ex. 24 at 5, 9; Dec. 29 Ex. 13 at 31-34; Dec. 29 Ex. 22 at 3.

### 3.   Burger offers no persuasive support for using Rule 12 on a disputed pretrial record to dismiss an indictment as not alleging a true threat.

Burger cites cases in which courts resolved an issue related to true threats as a matter of law, Def. Br. 22-25, but none of those cases offers persuasive support for the result he wants here: using Rule 12 to dismiss an indictment on a disputed pretrial record. Several of those cases involved a court's assessment of statements *after* the factual elaboration of a full trial. *See Watts v. United States*, 394 U.S. 705, 705-07 (1969)

(reviewing ruling on motion for acquittal); *United States v. Lincoln*, 403 F.3d 703, 705 (9th Cir. 2005) (same); *United States v. Viefhaus*, 168 F.3d 392, 395-97 (10th Cir. 1999) (assessing threats with benefit of trial record); *United States v. Landham*, 251 F.3d 1072, 1078, 1081-84 (6th Cir. 2001) (same). Another affirmed a district court's refusal to resolve pretrial whether a statement was a true threat. *See United States v. Stock*, 728 F.3d 287, 298-301 (3d Cir. 2013). And the district-court and state-court cases Burger offers do not mention, let alone discuss, the federal Rule 12 standard. *See United States v. Cook*, 472 F. Supp. 3d 326 (N.D. Miss. 2020); *United States v. O'Dwyer*, No. 10-34, 2010 WL 2606657 (E.D. La. June 24, 2010); *United States v. Baker*, 890 F. Supp. 1375 (E.D. Mich. 1995)[1]; *State v. Metzinger*, 456 S.W.3d 84 (Mo. Ct. App. 2015).

That leaves Burger with this Court's unpublished decision in *United States v. O'Dwyer*, 443 F. App'x 18 (5th Cir. 2011). But Burger makes no effort to explain how the published decisions *O'Dwyer* cited—both of which affirmed denials of motions for acquittal at trial—support using Rule 12 to forecast from a pretrial record what a jury might find. *See id.* at 20 (citing *Daughenbaugh*, 49 F.3d 171, and *Morales*, 272 F.3d 284). Even under that approach, Burger does not explain how his threat to

---

[1] Another district court has called *Baker* a "well-recognized outlier in federal case law" on true threats. *United States v. Sayward*, No. 3:22cr111, 2022 WL 17849053, at *3 (D.N.D. Dec. 22, 2022) (collecting cases). The Sixth Circuit affirmed *Baker* without endorsing its analysis in *United States v. Alkhabaz*, 104 F.3d 1492, 1493 (6th Cir. 1997), and later disclaimed the alternative grounds on which it had affirmed, *see United States v. Doggart*, 906 F.3d 506, 512 (6th Cir. 2018).

attack Christians attending a concert on a specific date and to attack law enforcement officers are like the "vague speculation about becoming homicidal" at issue in *O'Dwyer*. *Jubert*, 139 F.4th at 491. Thus, even if *O'Dwyer* should have been resolved pretrial as a matter of law, this case should not be.

### B.    The district court misapplied Rule 12 by improperly resolving disputed facts on an incomplete pretrial record.

The district court's improper resolution of disputed facts is enough by itself to justify reversal. But the district court also acted on the incorrect assumption that four paragraphs of the government's response to the motion to dismiss contained "the only facts that could possibly support a conviction here." ROA.527. That incorrect assumption compounded the district court's error under Rule 12. U.S. Opening Br. 24-25.

Burger offers no defense for ruling on an incomplete record other than his contention that the district court did not know better. Def. Br. 26. But the government alerted the district court to this problem. Before the district court announced its intent to dismiss the indictment, the government repeatedly referred to evidence that would be presented to the jury and even filed its anticipated trial exhibits. ROA.391-93, 467-68, 472-73, 697. On the same day it filed its trial exhibits, the government pointed out that "[n]o circuit . . . allows [pretrial] review on an incomplete or disputed factual record." ROA.470 (quoting *United States v. Rodríguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019)). And the government

made this point as part of its overall position that pretrial dismissal under Rule 12 was improper. ROA.469-70. Thus, the district court was on notice both that the pretrial record it relied on was incomplete and that ruling on that incomplete record was error.[2]

### C. Under the correct standard, Burger's statements were unprotected and criminally punishable true threats.

Burger does not dispute that a statement is an unprotected true threat punishable as a crime when (1) "an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm" and (2) the speaker was aware of and recklessly disregarded its threatening nature. *Jubert*, 139 F.4th at 490-91 (cleaned up). And he does not mention, let alone contest, the second requirement. That leaves him to argue that—as a matter of law—no objectively reasonable person could interpret his threats as serious. Def. Br. 28-38. This Court's cases on true threats do not support his argument.

### 1. That Burger's threats appeared in the online platform Roblox did not mean they were not true threats.

Although "context is critical" in deciding whether a statement is a true threat, *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023), that does not mean that statements made in Roblox cannot be taken seriously as a

---

[2] *United States v. Mix*, 791 F.3d 603, 612 (5th Cir. 2015), is not to the contrary. There, the government urged a point made in a case that it did not "quote, discuss, or in any way raise" for this point and that it "essentially disclaimed" as superseded. *Id.* Here, the government alerted the district court that the full trial record had not been presented and quoted authority to point out that pretrial dismissal is improper on an incomplete record. ROA.470.

matter of law. That much is apparent from the reaction of the two Roblox users who reported Burger and the ISIS-linked Roblox users who encouraged him. *See supra* pp. 3-4. Thus, as in *Perez*—where a defendant argued that emojis indicating humor undercut the seriousness of his threat—what a reasonable observer would understand from the context here is a factual question a jury should resolve, not a legal question for the district court. *See* 43 F.4th at 439-40, 443.

The cases Burger relies on, Def. Br. 20, did not involve statements or contexts remotely like his statements in Roblox. In *Watts*, an attendee at a political rally laughed—and inspired laughter from the crowd—when he talked about events he vowed would never occur. 394 U.S. 706-08. In *Bailey*—which involved a summary-judgment record viewed in the light most favorable to the person who issued the alleged threat—the statement was an "absurd post" that "call[ed] for rescue by Brad Pitt." 87 F.4th at 282, 285. And in the Missouri case Burger cites, the defendant's tweets made clear that he was trying to make jokes about a sporting event. *Metzinger*, 456 S.W.3d at 88. Nothing here suggests that anyone regarded Burger's statements as an attempt at humor.

Nor does anything here require the conclusion as a matter of law that Burger's statements were "debate," Def. Br. 31. Whether or not the "Church" environment was "intended for provocative debate," Def. Br. 17, that is not how Burger used it when he announced plans to attack a Christian music concert and law enforcement. ROA.36-41, 45, 359-63.

9

At any rate, even if some "charged political speech" falls into a "gray area," *Counterman v. Colorado*, 600 U.S. 66, 88 (2023) (Sotomayor, J., concurring), the Supreme Court has explained that requiring a mental state of at least recklessness "offers enough breathing space for protected speech without sacrificing too many of the benefits of enforcing laws against true threats," *id.* at 82 (majority opinion) (cleaned up). Burger intentionally or recklessly announced his attack despite awareness that others would regard those announcements as threats. U.S. Opening Br. 21-24. So punishing those announcements as true threats does not risk suffocating protected debate.

Pursuing criminal charges for statements made in an online platform is neither "unprecedented" nor a way to open metaphorical "floodgates." Def. Br. 2, 30-31. As different means of communication develop, people who issue threats begin to use them—from letters, *Daughenbaugh*, 49 F.3d at 173, to phone calls, *United States v. Myers*, 104 F.3d 76, 77-78 (5th Cir. 1997), to internet chat rooms, *Morales*, 272 F.3d at 285-86, to social-media posts, *Perez*, 43 F.4th at 439-40. That Burger used a relatively new medium does not prevent his announcements of pending attacks from being true threats.

## 2. Counts One and Two alleged unprotected true threats against a Christian music festival.

Even as Burger emphasizes one form of context—the Roblox platform—he ignores other context surrounding the statements charged in

Counts One and Two and even aspects of the statements themselves. Def. Br. 32-35.

For example, Burger claims that the statement charged in Count One "lacks any specificity about when, where, or how any purported attack may occur." Def. Br. 32. But Burger did specify when (April) and where ("upon their capit[a]l") he would "deal a grievous wound upon the followers of the Cross." ROA.36-39, 551-52. Statements not captured in screenshots specified that he would do something at a Christian music concert. ROA.554-55. Burger conveyed how he would carry out his attack by stating, as part of this exchange, that another user could check a different platform, where he apparently posted photographs of guns. ROA.13-14.

A few days later, in the statements charged in Count Two, Burger began by telling a Discord user in Saudi Arabia that he had "come to a conclusion on the when and where." Dec. 29 Ex. 2a. That Saudi Arabian user invited Burger to Roblox, where Burger elaborated that he would attack "a music festival [a]ttracting bounties of Christians" on April 12. *Id.*; ROA.37, 561. Burger attempts to portray the Christian concert scheduled for precisely that date in Austin as a "(mystery) festival." Def. Br. 37. But tickets for a Christian music concert went on sale a less than a week before Burger started announcing he was preparing an attack. *See* Do512, *Josiah Queen: My Promised Land Tour W/ Strings & Heart*, https://do512.com/events/2025/4/12/josiah-queen-my-promised-land-

tour-tickets (last visited Jan. 14, 2026). And despite Burger's mischaracterization of the government's statements about the link between his threats and the concert, *see* Def. Br. 37, circumstantial evidence, including Burger's visits to the concert promoter's website link his threat to that concert, *see* ROA.48, 566-67; Dec. 29 Ex. 24 at 5.

If Burger means to argue that the indictment should have been dismissed because it did not include these factual details, *see* Def. Br. 32-33, 37, he is wrong. "To comply with Rule 7(c) of the Federal Rules of Criminal Procedure, an indictment need not provide the evidentiary details of the government's case." *United States v. Rafoi*, 60 F.4th 982, 994 (5th Cir. 2023) (cleaned up). Rather, "[a]n indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Cooper*, 714 F.3d 873, 877 (5th Cir. 2013). Each count in the superseding indictment alleges every essential element of the offense—that Burger transmitted in interstate commerce a communication containing a threat to injure the person of another, *see* 18 U.S.C. § 875(c), and did so with the requisite mens rea, *see Counterman*, 600 U.S. at 79. ROA.96-98.[3] And each count quoted key

---

[3] The superseding indictment's allegation of the requisite mens rea distinguishes it from the indictment found defective in this Court's recent decision in *United States v. Nformangum*, No. 24-20515, 2026 WL 18900, at *4 (5th Cir. Jan. 2, 2026).

portions of each statement to provide particularized notice that will prevent subsequent prosecution for the same statements. ROA.96-98. In any event, an attack on the facial sufficiency of the indictment is not the sort of challenge Burger brought or the district court decided. Burger invited the district court to consider many disputed facts outside the indictment, *see, e.g.*, ROA.351-63, and the district court (erroneously) did so, *see, e.g.*, ROA.523-24, 527-28.

Burger calls his statements "hyperbolic," "borderline incoherent," and "rambling." Def Br. 16-17, 32-33. But those characterizations do not distinguish him from other defendants who issued true threats. True threats are often hyperbolic and less than fully coherent. *See, e.g.*, *Nformangum*, 2026 WL 18900, at *1-4[4]; *Perez*, 43 F.4th at 439, 443[5]; *Morales*, 272 F.3d at 286, 288[6]; *Daughenbaugh*, 49 F.3d at 173-74.[7]

---

[4] "You sick pieces of human scum will not have the f'ing audacity to address this any further and to strip us of our rights like you did our grandparents so many years ago."

[5] "PSA!! Yo rt HEB MERCADO!! My homeboys cousin has covid19 and has licked everything for past 2 days cause we paid him too 😂 😂 😂 😂 . . . big difference is we told him not to be these fucking idiots who record and post online . . . YOU'VE BEEN WARNED!!! HEB on nogalitos next ;)"

[6] "I will kill /TEACHERS AND STUDENTS AT MILBY . . . CAUSE AM TIRED . . . . . . HOUSTON . . . YES F NE ONE STANDS N MY WAY WILL SHOT . . . I HATE LIVE . . . YES MY NAME S ED HARRIS . . . SEE U N A COUPLE OF MONTHS."

[7] "Now comes the Aryan warrior to bring you warning of your coming death when the new socialist government comes into power. When the new government comes into power, all races other than the Aryan race will be deported or executed, all white judges will be checked out and will be asked to leave the country or be executed. This is your last warning to change your ways or die! The Aryan warrior has spoken."

### 3. Count Three alleged an unprotected true threat against law enforcement.

Burger claims the statement about attacking law enforcement charged in Count Three could not be a true threat "because 'it was expressly made conditional upon an event.'" Def. Br. 34 (quoting *Watts*, 394 U.S. at 707). This Court's decision in *Myers* disproves his notion that an objectively reasonable person cannot view any conditional statement as expressing a serious intent to cause harm. 104 F.3d at 78-79. The statement "If I see you, I will kill you," is expressly conditional, but a reasonable person with a chance of seeing the speaker would regard it as a threat. Neither case Burger cites supports a contrary bright-line rule. His truncated quotation from *Watts* leaves off that the statement there "was expressly made conditional upon an event—induction into the Armed Forces—*which [the defendant] vowed would never occur.*" 394 U.S. at 707 (emphasis added). And he fails to acknowledge that the statement in *O'Dwyer* was conditioned on highly contingent events that that the defendant was trying to avoid: running out of medication and then having an adverse reaction. 443 F. App'x at 19.

In contrast, Burger's statement that he had "prepared munitions" and planned "[t]o take many with him . . . [o]n the path of martyrdom" suggested a high likelihood of confrontation with law enforcement. It does not matter whether he actually prepared munitions, Def. Br. 35, because a statement can be both false (to the speaker) and serious (to the observer). *See Perez*, 43 F.4th at 443 ("Perez's expression, though false,

14

was 'serious.'") (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). At a minimum, a jury should be allowed to decide whether a reasonable observer would regard the statement as serious.

## II.    The district court abused its discretion in releasing Burger unconditionally and has not mooted its abuse of discretion by issuing a new release order without jurisdiction.

Burger does not dispute that the evidence as a whole does not support the district court's second release order or that the district court erred procedurally in issuing it. U.S. Opening Br. 34-39; Def. Br. 38-40. Instead, he argues that the second release order is moot because the district court responded to this Court's administrative stay of that order by issuing a third release order. Def. Br. 3, 38-40. He is wrong.

The third release order could not have mooted the second because the third order was a nullity under the "one-court-at-a-time rule" explained in *United States v. Willis*, 76 F.4th 467, 471 (5th Cir. 2023). The government's appeals from the district court's decisions to release Burger pending appeal put the question of detention or release before this Court and so divested the district court of control over that aspect of the case. *See id.*; ROA.496, 532.[8] This Court's clarification of its stay did not, as

---

[8] Burger argues that this Court lacks jurisdiction to address the district court's first release order because the first notice of appeal did not explicitly mention it. Def. Br. 3. That does not matter because the government's appeal from the district court's second release order, ROA.532, put the question of detention or release before this Court anyway. Regardless, "notices of appeal are liberally construed where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party." *Williams v. Henagan*, 595 F.3d 610, 616 (5th Cir. 2010). The first release order is inextricably bound up with the district court's oral dismissal order, ROA.715; the government appealed from the district court's denial of a stay of the

Burger suggests, Def. Br. 14, allow the district court to take whatever further steps it wished under 18 U.S.C. § 3143. Unpub. Order 2, ECF 81-1. Rather, this Court clarified that "nothing prohibits the *government*, in *its* discretion, from detaining the defendant or from requesting that the district court impose conditions of release pursuant to 18 U.S.C. § 3143." Unpub. Order 2, ECF No. 81-1 (emphasis added). The government did not ask the district court to impose conditions of release.

Recognizing that the third release order is a nullity would not turn this Court into an "unconstrained tribunal searching for potential errors in the record," as Burger claims, Def. Br. 39. This Court would address whether an order squarely before it—the second release order—is moot by applying the one-court-at-a-time rule, a "longstanding tenet of American procedure," *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023).

Burger points out that the district court has announced it will do the same thing again regardless, Def. Br. 39-40, but that is no excuse not to enforce the one-court-at-a-time rule. This Court has rejected the notion that it should dispense with that rule as an "empty formalism" when a district court says it will do the same thing again. *Willis*, 76 F.4th at 479. That is because "jurisdiction matters." *Id.* In issuing a release order after this Court stayed its previous release order pending appellate review, the district court violated that principle.

---

dismissal and first release orders, ROA.496; and Burger does not claim that he did not understand that the first order was before this Court.

### III. This Court should reassign this case to a different district judge on remand.

In an effort to keep his case before a district judge he sees as favorable to him, Burger opposes reassignment by focusing on conciliatory statements the judge made. Def. Br. 42-43. But a district judge's adding some conciliatory comments to the record does not prevent reassignment when the record as a whole "reveal[s] a level of prejudice—not just skepticism." *United States v. Khan*, 997 F.3d 242, 250 (5th Cir. 2021). Burger ignores how the district judge's view, as shown through his words and actions, became fixed against the government as these appeals proceeded.

At first, the district judge expressed no antagonism toward having his rulings challenged. ROA.715-17. But when the government appealed and this Court intervened with directives, the district court began circumventing them. The day after this Court administratively stayed the order releasing Burger unconditionally, the district judge issued another order releasing Burger unconditionally, opined without evidence that Burger "poses no flight or safety risk," and ignored the government's evidence suggesting otherwise. ROA.514-15; Unpub. Order, ECF No. 28-1. Burger asserts that the district judge acted properly, Def. Br. 46, but does not address this Court's observation that the order lacked evident support, Unpub. Order 3, ECF No. 79-1.

When this Court intervened again to stay the second release order, the district court did not follow this Court's clarification that "the government, in its discretion" could detain Burger. Unpub. Order 2, ECF

17

No. 81-1. Instead, he took over a hearing scheduled by a magistrate judge and released Burger again. Dec. 29 Hr'g 5, 54-57. Burger's attempt to explain this action by discussing district judges' general authority over magistrate judges, Def. Br. 46-47, misses the point. The district judge's actions revealed that he was not content to let the process unfold but wanted to involve himself to arrive at a particular result. *Cf. Miller v. Sam Houston State Univ.*, 986 F.3d 880, 887 (5th Cir. 2021) (noting, in the process of reassigning a case, that the removed district judge had "actually attended parts of [a civil] deposition and participated").

At this most recent hearing, the district judge responded to the government's effort to explain this Court's order by saying, "I don't care." Dec. 29 Hr'g 7. He repeatedly cut off the government's attempts to offer testimony. Dec. 29 Hr'g 14, 16-18, 31, 33-34. He questioned the credibility of the government's attorney when he did not like the government's position on a condition of release. Dec. 29 Hr'g 53. And he asserted that a decision by this Court reversing his dismissal would result in "an impossible trial" based on an issue the parties had agreed was resolved. Dec. 29 Hr'g 25-26, 28-29; ROA.405.

Burger notes that the district court characterized a future trial as "impossible" as part of his critique of how law enforcement officers handled Burger's interview. Def. Br. 48-49. But that context only underscores that the district judge is fixed in his view of the appropriate outcome. During what was supposed to be a hearing on detention or release, the

district judge raised the obstacles he saw with trying Burger given that
agents interviewed him before he received warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966). Dec. 29 Hr'g 25. The judge did so unbidden:
The parties resolved that issue before the judge delved into it by agreeing
that the government would not use Burger's interview in its case-in-chief.
ROA.405, 685. And the government cannot use the interview to cross-examine Burger if he does not testify, as he says he will not. ROA.621-
23.[9]

At bottom, although Burger tries to address and explain away each
of the district judge's actions and comments in isolation, Def. Br. 45-48,
the trend of those actions and comments shows reassignment is warranted. They show that the district judge "would reasonably be expected
upon remand to have substantial difficulty in putting out of his . . . mind
previously-expressed views or findings determined to be erroneous,"
*Khan*, 997 F.3d at 249. And they show that "reassignment is advisable to
preserve the appearance of justice" because "the facts might reasonably

---

[9] Even when a statement has been obtained in violation of *Miranda*'s prophylactic requirements—and the government does not concede that Burger's was—those statements may still be used to impeach a defendant who testifies. *See Harris v. New York,*
401 U.S. 222, 225 (1971) ("Every criminal defendant is privileged to testify in his own
defense, or to refuse to do so. But that privilege cannot be construed to include the
right to commit perjury."); *Bradford v. Whitley*, 953 F.2d 1008, 1011 (5th Cir. 1992)
("That the government may have resorted to unconstitutional means to obtain a confession does not mean the defendant is justified in turning the illegality to his advantage, thereby preventing the prosecution from exposing his prior inconsistent
statements at trial.").

cause an objective observer to question the judge's impartiality." *Id.*
(cleaned up).

Turning to the remaining factor, Burger asserts that reassignment
"would waste judicial resources." Def. Br. 51. But that is not what the
third factor asks. To weigh against reassignment, the waste must be "out
of proportion to any gain in preserving the appearance of fairness."
*Khan*, 997 F.3d at 249. For example, in *Khan*, this Court reassigned a
case even though the district judge had presided over it for four-and-a-
half years, through seven conferences and hearings producing a "sub-
stantial and nuanced factual record." *Id.* at 250. Reassignment was "re-
grettable" but "nonetheless necessary." *Id.* At any rate, the only "waste"
Burger identifies is losing the district judge's purported familiarity with
the admissibility under *Miranda* of Burger's interview. Def. Br. 51. The
parties resolved that issue before the judge addressed it and explained
why it is unlikely to recur. *See supra* p. 19.

## Conclusion

This Court should reverse the district court's order dismissing the indictment, vacate the district court's release orders, and remand this case for trial before a different district judge.

Respectfully submitted,

Justin R. Simmons
United States Attorney

*/s/ Zachary C. Richter*

By:   Zachary C. Richter
Mark T. Roomberg
Assistant United States Attorneys

21

## Certificate of Service

I certify that on January 16, 2026, I filed this brief through this Court's electronic case-filing system, which will serve it on all registered counsel.

/s/ *Zachary C. Richter*
Zachary C. Richter
Assistant United States Attorney

\*    \*    \*

## Certificate of Compliance

I certify that:

(1) this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,263 words, excluding the parts of the brief exempted by Rule 32(f); and

(2) this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 365 in size 14 Calisto MT font.

Dated:    January 16, 2026

/s/ *Zachary C. Richter*
Zachary C. Richter
Assistant United States Attorney